UNITED STATES of America,
Appellee,

v.

Victor F. MAGANA, Appellant.

No. 74–1635.

United States Court of Appeals,
Ninth Circuit.

Feb. 12, 1975.

Rehearing and Rehearing En Banc
Denied April 1, 1975.

Alvin S. Michaelson (argued), Los Angeles, Cal., for appellant.

Howard Matz (argued), Los Angeles, Cal., for appellee.

Before MERRILL and GOODWIN, Circuit Judges, and WOLLENBERG,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

Victor F. Magana challenges the district court's refusal to suppress the evidence which led to his conviction under 21 U.S.C. §§ 841(a)(1) and 846.

On October 12, 1973, Officer Davenport of the Los Angeles Police Department received a tip from a reliable informant that two of his acquaintances (Bugarin and Gianetti) were prepared to sell Davenport eight ounces of heroin. The transaction was expected to take place the next afternoon.

Davenport and the informant met Bugarin near a residence at 10942 Hulme Street, Lynwood, California. Bugarin

* The Honorable Albert C. Wollenberg, United States District Judge for the Northern District of California, sitting by designation.

and the informant entered the house, and shortly thereafter returned to Davenport's car. The informant told Davenport that he had seen the heroin. Acting satisfied with the pending purchase, Davenport went to the trunk of his car, pretending to get the money to pay for the heroin. Davenport blew his nose, a prearranged signal to police officers hidden nearby. The officers came out of hiding and arrested Davenport, Bugarin, and the informant.

Two other officers (Ripley and Stanley) had established a stakeout near the residence. Their mission was to await the arrival of the undercover team and ensure Davenport's safety. When Davenport signaled, Ripley and Stanley drove into the driveway of the Hulme Street residence, where they saw a man (Magana) standing in the open garage. As the officers continued driving, Magana walked to the open garage door. Officer Ripley testified that he showed Magana his badge, and then saw Magana throw something down. Officer Stanley arrested Magana. After Stanley had arrested Magana, Ripley went into the adjacent garage and saw two condoms containing heroin. (The heroin was in plain view to one standing in the driveway near the garage, but Ripley said he discovered it only after he had entered the garage.)

Prior to Davenport's signal, Ripley had seen Magana come from the front door of the house and walk down the driveway toward the garage. Ripley knew after the signal that an illegal transaction was in progress. Ripley did not know whether additional contraband or participants in the heroin scheme remained at the Hulme Street location. However, Ripley did have probable cause to believe that Bugarin had an uncaught partner in crime (Gianetti), even though the officers did not say they thought Magana was Gianetti. The officers did not know whether Magana was connected with Bugarin; they knew only that Magana was at a suspicious place at a suspicious time.

With the foregoing facts before him, Ripley had probable cause, after he was in the Hulme Street driveway, and after he saw Magana throw something away, to believe that Magana was one of the men the officers were seeking in connection with the heroin transaction just completed. If Ripley and Stanley were lawfully in the driveway, then the arrest of Magana without a warrant was lawful, and the evidence which flowed from that arrest was not vulnerable to Magana's motion to suppress.

We turn then to the question whether, on these facts, police officers have the right to drive into a private driveway to see whatever is there to be seen and to be in a position to follow up their investigation with an arrest, a search, and a seizure of evidence if further facts unfold.

The government contends that Magana's driveway is not protected by the Fourth Amendment. In United States v. Bustamante-Gamez, 488 F.2d 4 (9th Cir. 1973), cert. denied, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974), discussing the validity of a search originating with an entry upon a driveway, this court stated:

> "It is by no means certain that the entry upon the driveway was contrary to the Fourth Amendment, even though there were no warrant or exceptional circumstances excusing failure to obtain one. The driveway may not have been such a place as to support a reasonable expectation of privacy on the part of the defendants. * * * However, for reasons that will appear, we need not and do not decide this question." 488 F.2d at 7–8.

The question deferred in *Bustamante-Gamez* is before us again. The driveway where Magana was arrested was within the curtilage of the house Magana was using, but "a reasonable expectation of privacy," and not common-law property distinctions, now controls the scope of the Fourth Amendment. *See* Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The proper inquiry is whether the officers' intrusion into the residential driveway constituted an invasion into "what the resident seeks to preserve as private

even in an area which, although adjacent to his home, is accessible to the public * * *." Wattenburg v. United States, 388 F.2d 853, 857 (9th Cir. 1968).

 A driveway is only a semiprivate area. The expectation of privacy which a possessor of land may reasonably have while carrying on activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street. It would be equally unwise to hold, as a matter of law, that all driveways are protected by the Fourth Amendment from all penetrations by police officers as to hold that no driveway is ever protected from police incursions. The test in each case should be that of reasonableness, both of the possessor's expectations of privacy and of the officers' reasons for being on the driveway.

Here, the officers were providing security for their fellows who were known to be effecting the arrest of a narcotics dealer engaged in business in the residence of which the driveway formed a part. The act of the officers in turning into the driveway at the time and under the circumstances of this case was reasonable. Magana's privacy was not unreasonably invaded when the officers entered his driveway and then saw him throw something away. *See* United States v. Capps, 435 F.2d 637 (9th Cir. 1970).

Magana has argued that his motion to suppress is governed by United States v. Connolly, 479 F.2d 930 (9th Cir.), cert. dismissed, 414 U.S. 897, 94 S.Ct. 248, 38 L.Ed.2d 139 (1973). In *Connolly,* agents knew that drugs had been removed from the premises in question not long before they arrived. But they did not know who might be inside, how long those persons may have been there, or what relationship they might have to an already arrested defendant. All that the agents knew in *Connolly* was that some contraband probably remained on the premises. In holding that a desire to make an arrest was no justification for the intrusion into the house, we stated that "[e]ven certain knowledge that contraband is within a dwelling does not con-

stitute probable cause to arrest whoever happens to be inside * * *." 479 F.2d at 936. But the occupants were arrested inside their house after the officers broke in.

Here, the arrest did not involve intrusion into the house, and the narcotics in Magana's garage were in plain view. We hold that the seizure of the narcotics was an incident of a lawful arrest. When the officers saw Magana throw something away, at or near the scene of a narcotics arrest then in progress, they could assume that the man they were about to arrest was party to the illegal activity and if not detained might destroy or conceal other evidence.

Because Magana's arrest was legal, the motion to suppress the evidence seized in connection therewith was correctly denied.

Magana has advanced other arguments asserting infirmity in his consent to a further search that produced additional evidence used against him, but the district court found that the evidence seized was seized pursuant to a consent voluntarily given. The finding was supported by the record.

Affirmed.