COMMONWEALTH *vs.* JULIUS SIMMONS.

Barnstable.  November 4, 1980. — February 27, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Evidence*, Identification of inanimate object.  *Due Process of Law*, Iden-
tification of inanimate object.  *Search and Seizure*, Automobile on
private property.  *Constitutional Law*, Search and seizure.

Constitutional principles applicable to pretrial identifications of suspects
in criminal cases are not applicable to pretrial identifications of inani-
mate objects.  [49-53]
Where the record in a criminal case was insufficient to enable this court
to pass judgment on the Fourth Amendment issue of the admissibility
of a pretrial identification of an automobile by the victim of armed
assault and rape who had been led to view the automobile on private
property by police without a warrant and where the trial judge had
not conducted a voir dire nor made any findings on the search and
seizure issue, the case was remanded to the trial court for a hearing on
the reasonableness of the intrusion on private property.  [53-56]

INDICTMENTS found and returned in the Superior Court
on October 26, 1977.

The case was tried before *Umana*, J., a Municipal Court
judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct
appellate review.

*Michael D. Cutler* for the defendant.

*W. James O'Neill*, Assistant District Attorney, for the
Commonwealth.

WILKINS, J.  About ten days before the start of the de-
fendant's trial on indictments for rape, armed assault with
intent to murder, and assault and battery by means of a
dangerous weapon, two police officers took the victim onto
private property, owned by the defendant's mother-in-law,
to view a motor vehicle that was parked near the driveway.

The assistant district attorney in charge of the case instructed the police to make arrangements for the victim to see the motor vehicle because in a pretrial interview she had been unable to identify the model of the motor vehicle driven by her assailant. Without a search warrant, two police officers took the victim to the property where she looked at and in the motor vehicle. At trial, she described the vehicle driven by her attacker and further testified that the vehicle parked on the property was the one driven by the defendant on the night of the attack.

Not more than thirty minutes before the commencement of the trial, the assistant district attorney told defense counsel of the victim's out-of-court identification of the motor vehicle. Defense counsel moved for a continuance in order to prepare and present appropriate motions. He argued that the recent inspection of the motor vehicle violated his client's constitutional rights and so tainted the victim's identification testimony that it should be excluded.

The judge denied the motion for a continuance, no voir dire hearing was held on the admissibility of the identification evidence, and the case went to trial. Because of the suddenness with which the identification issue was presented to defense counsel, in fairness we treat the defendant's objections as presenting both a request for a continuance and a request for a voir dire hearing on the impermissible suggestiveness of the identification procedure and on the claimed unreasonable search of the motor vehicle.

Although a voir dire is not constitutionally required in all instances in which the admissibility of identification evidence is challenged, the better course would have been to have conducted a voir dire on the admissibility of the victim's identification of the motor vehicle. See *Watkins* v. *Sowders*, 449 U.S. 341 (1981). Because no voir dire was held and the case proceeded to trial, we assess the record to see whether there is a reasonable possibility — not necessarily a certainty — that the defendant may have been unfairly prejudiced by the admission of the identification testi-

mony.[1]  We conclude that there is no basis on due process or common law evidence grounds for suppressing evidence of the identification.  We do not accept the defendant's argument that constitutional principles concerning one-to-one confrontations between victims and suspects should be applied to "confrontations" between a victim and an inanimate object.  Granting that in some instances due process considerations might limit the admissibility of testimony of an identification of an inanimate object, we conclude that this case simply does not present such a situation.

We are not certain, however, that the intrusion on private property to view the motor vehicle was not a violation of the defendant's constitutional right against unreasonable searches.  We reject any suggestion that, if there was a constitutional violation, the admission of the victim's testimony of her out-of-court identification of the motor vehicle was harmless error.  The defendant was not in a position to present evidence on the warrantless search issue on the day trial started.  Therefore, we remand the case for a hearing on this point.  If there was a violation of the defendant's constitutional rights, there will have to be a new trial.

Before stating the reasons for our conclusions, we summarize the case presented against the defendant.  On a Friday evening, in October, 1977, between 7 P.M. and 7:30 P.M., the victim was walking on a public way in Hyannis and planning to hitchhike to her home.  A man driving a light blue Mustang stopped and offered her a ride.  She noted that the car had bucket seats, a floor shift, a glove compartment, dents on its black dashboard, and wires hanging down from the radio.  The driver of the car took her to a somewhat secluded spot.  When she rejected his offer to have sexual intercourse, he stabbed her with a knife,

---

[1] It would not have been an abuse of discretion if the judge had denied the request for a continuance and had held a voir dire immediately on the claimed due process violation.  The defendant makes no claim that he would have had evidence to present bearing on the suggestiveness of the motor vehicle identification, except through cross-examination of the Commonwealth's witnesses.

ordered her from the car, and raped her. He strangled her and threatened to kill her if she said anything about the incident and then drove off. A passing motorist took the victim to a fire station.

At trial, the victim identified the defendant as her attacker. There was police testimony that the victim made two photographic identifications of the defendant within two days of the incident in circumstances the defendant does not now challenge. On redirect examination, the victim testified that nine days before trial she had seen the same motor vehicle as that operated by her assailant, a blue Mustang. At the request of and in the company of two detectives she went to see the vehicle. She recognized the front seats and the dents on the dashboard and also the wires hanging out of the radio in front of the dashboard. On recross-examination, she testified that the car was parked in a private yard. No one opened the car door but she looked in through the passenger window. There was police testimony that the motor vehicle was the same one that the defendant had been seen driving the night of the crimes.

A Barnstable police officer testified that, when questioned at a hospital shortly after the incident, the victim, who was in pain and incoherent, stated that her attacker's vehicle was "a small vehicle, a Volkswagen-type of vehicle." She mentioned additionally the bucket seats, the floor shift, and that there were wires hanging down from the radio. It was the victim's reference to her attacker's vehicle as a Volkswagen-type of vehicle that prompted the assistant district attorney to be concerned about her ability to identify the vehicle.

The defendant was found guilty of each of the three crimes. We granted his motion for direct appellate review of his appeal.

1. We consider first the defendant's contention that the circumstances in which the victim viewed the defendant's motor vehicle denied him due process of law and a fair trial because it was an impermissibly suggestive confrontation. Relying on *United States* v. *Wade,* 388 U.S. 218 (1967), and

*Stovall* v. *Denno*, 388 U.S. 293 (1967), he argues that the same constitutional principles that govern a confrontation between a witness and a suspect should apply to the identification of an inanimate object. The defendant notes that, under both the Constitution of the Commonwealth and the Constitution of the United States, one-to-one showups, although not per se invalid, are regarded as most susceptible to the influence of suggestion and consequent mistaken identification. See *Commonwealth* v. *Jackson*, 377 Mass. 319, 332 (1979); *Commonwealth* v. *Nolin*, 373 Mass. 45, 51 (1977). He notes further that disapproval of one-to-one confrontations has extended beyond in-person identifications to photographic identifications (*Simmons* v. *United States*, 390 U.S. 377, 383-384 [1968]; *Commonwealth* v. *Gilday*, 367 Mass. 474, 494-495 [1975]), and to voice identifications (*Commonwealth* v. *Torres*, 367 Mass. 737, 740 [1975]).

No court to our knowledge has applied principles applicable to pretrial identifications of suspects to pretrial identifications of inanimate objects. Those few opinions that have dealt with this issue are unsupportive of the defendant's argument. In *Inge* v. *Commonwealth*, 217 Va. 360 (1976), a witness was taken to a parking lot to look at the defendant's truck. Police officers were photographing it as the witness approached. There was no vehicle of similar design nearby. The witness was permitted to testify that the vehicle appeared to be the same truck he had seen on the night of the crime. The Supreme Court of Virginia upheld the admission of the identification evidence, declining "to hold that a lineup is required for the identification of an inanimate object possessed by a suspect" because "the one-on-one identification of [the] vehicle presents questions as to the credibility of the witness and the weight of his testimony rather than an admissibility question of constitutional dimension." *Id.* at 365.

A Pennsylvania court upheld the admission of identification testimony of a bag and a barrel of a gun which the police showed the witness shortly after the commission of a

crime. *Commonwealth* v. *Carter*,       Pa. Super. Ct.       ,
(1979) (414 A.2d 369, 373 [Pa. Super. Ct. 1979]). The
court noted "the enormous probative weight" of evidence
identifying the accused and that identification of an item of
real evidence "does not generally have this effect." *Id.* "Con-
sequently, it has never been the case that identification of an
object must be subject to the same precautions given the
identification of a person. Rather, any uncertainty in the
description, or suggestivity in a prior identification, goes to
the weight to be accorded the testimony, not its admissibility.
See *Buchanan* v. *State*, 561 P.2d 1197 (Alaska 1977); *People*
v. *Coston*, [40 Colo. App. 205 (1977)]; *Klase* v. *State*, 346
A.2d 160 (Del. 1975); *Inge* v. *Commonwealth*, 217 Va. 360
(1976)." *Id.*[2]

Although we are aware of no case in which due process
considerations have led to the suppression of an out-of-court
identification of an inanimate object, we recognize that, in
an extreme case, the degree of suggestiveness of an identifi-
cation procedure concerning an inanimate object might rise
to the level of a denial of due process. Even if constitutional
considerations did not apply, an appropriate rule of evi-
dence might require that an identification of an inanimate

---

[2] The cited opinions, other than that of the Virginia court discussed
above, are less in point. *Buchanan* v. *State*, 561 P.2d 1197, 1202 (Alaska
1977), concerned an out-of-court photographic identification of a motor
vehicle. The defendant's argument focused on the admissibility of that
identification because it was hearsay. The court rejected the argument
that the identification was unfair but did not discuss the issue in con-
stitutional terms.

The other two cases involved "lineups" of personal property. In *Klase*
v. *State*, 346 A.2d 160, 162 (Del. 1975), the defendant objected to a
"lineup" of six knives as "impermissibly suggestive," relying on *Stovall* v.
*Denno*, 388 U.S. 293 (1967), and *Simmons* v. *United States*, 390 U.S. 377
(1968). He did not argue that a "lineup" was required. The court found
no due process violation, assuming arguendo that such principles applied.
*Klase* v. *State*, *supra* at 162. The court cautioned "against the admission
into [*sic*] evidence of unnecessary 'lineup' identification of inanimate ob-
jects in the ordinary case." *Id.*

The *Coston* case involved a lineup of motor vehicles. *People* v. *Coston*,
40 Colo. App. 205, 207-208 (1977). The court concluded that there was
no right to have counsel present and that any suggestiveness of the "line-
up" affected only the weight to be given to the evidence, not its admis-
sibility.

object not be admitted in evidence where the government used a highly suggestive identification procedure because the unfair, prejudicial, and unreliable quality of the identification would outweigh its probative value. See W.B. Leach & P.J. Liacos, Massachusetts Evidence 295 (4th ed. 1967). We recognize, however, that there is a difference between an out-of-court identification of a defendant and an out-of-court identification of an inanimate object. The chances of fundamental unfairness are greater in the former situation. Identification of a defendant directly tends to prove the case against him. Identification of tangible property is only indirect proof of the defendant's guilt, even though its force may be most persuasive in certain instances. Motor vehicles, and most tangible objects, are not unique. There is only one person with the physical characteristics of the defendant, but there are many blue Mustangs. There is often a further distinction between identification of people and identification of property. A lineup of people is practical. A lineup of property may not be. It would have required a considerable effort, if it could have been done, to place the Mustang in a lineup. We reject the notion that a lineup of inanimate objects is required in circumstances where a lineup of people would be required.

The victim's identification of the defendant's motor vehicle was not unfairly prejudicial to him. In a case such as this, the circumstances of the identification were properly submitted to the jury. Defense counsel forcefully cross-examined the victim, pointing out potential weaknesses in her identification. At his request, the jury viewed the Mustang, and counsel pointed to salient features of the motor vehicle not identified by the victim. He argued to the jury that there was a rapist, somewhere at large. The question was appropriately one for the jury, including the suggestiveness of the "confrontation" and the availability of fairer identification procedures (such as a lineup). *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 308 (1979). "While a voir dire would have been permissible, we conclude that it was not required." *Commonwealth* v. *Bumpus*, 354 Mass. 494, 501-502 (1968), cert. denied, 393 U.S. 1034 (1969).

One further aspect concerning the claimed suggestiveness of the identification of the Mustang must be considered. The defendant argues that the identification was impermissibly suggestive because the police told the victim that she was going to look at the car. The evidence does not support a claim that the police acted improperly. On recross-examination, the victim testified as follows. DEFENSE COUNSEL: "They told you where you were going?" THE VICTIM: "To look at the car." Shortly after that, DEFENSE COUNSEL: "And you were told this was the Defendant's car?" THE VICTIM: "They asked me." There was no evidence by either police officer who took the victim to view the Mustang concerning what he said to the victim about the ownership of the car. We see no basis, on the ground of impermissible suggestiveness, for keeping from the jury the victim's identification of the motor vehicle. The defendant had an adequate opportunity to elicit evidence that the police conducted an improperly suggestive identification procedure and did not do so.[3]

2. We deal next with the defendant's argument that the victim's viewing of his motor vehicle, shortly before trial in the company of two police officers, was a warrantless, unreasonable search in violation of his constitutional rights. The constitutional protection against unreasonable searches extends to people and not to places. *Katz* v. *United States*, 389 U.S. 347, 351 (1967). There can be no valid argument that there were exigent circumstances justifying the war-

---

[3] Often it would be desirable to conduct a voir dire on a challenge based on a claimed suggestive "confrontation" in the identification of an inanimate object. If an identification was unfairly suggestive, tainted perhaps by what the victim was told or by the circumstances of the "confrontation," the question would then arise whether the victim should be allowed nevertheless to give an in-court identification of the object because (a) the Commonwealth had shown that the in-court identification had a source independent of the unfair procedures (see *Commonwealth* v. *Jackson*, 377 Mass. 319, 331 [1979]) or possibly (b) the Commonwealth had shown that the out-of-court identification was nevertheless reliable and was itself, therefore, admissible (see *Commonwealth* v. *Moon*, 380 Mass. 751, 759 [1980]). In such situations, findings by the trial judge are most important.

rantless search of the vehicle. Cf. *Commonwealth* v. *Rand*, 363 Mass. 554, 560-561 (1973). In the circumstances of this case, both the defendant's standing to raise the constitutional claim and the validity of the claim itself depend on whether he had a reasonable expectation of privacy in the area where the motor vehicle was parked. See *Rawlings* v. *Kentucky*, 448 U.S. 98, 104-105 (1980); *United States* v. *Salvucci*, 448 U.S. 83, 91-92 (1980); *United States* v. *Chadwick*, 433 U.S. 1, 6-7 (1977). The question is thus not one of property law — that is, whether the area was private property — but rather whether the area was one as to which, for the purposes of the Fourth Amendment and art. 14 of the Declaration of Rights of the Constitution of the Commonwealth, the defendant had a reasonable expectation of privacy. See *United States* v. *Santana*, 427 U.S. 38, 42 (1976); *Commonwealth* v. *Ortiz*, 376 Mass. 349, 351-353, 358 (1978). The constitutional protection may extend beyond a house to include immediately adjacent areas, sometimes called the "curtilage." See *Commonwealth* v. *Colella*, 360 Mass. 144, 150 (1971); *Wattenburg* v. *United States*, 388 F.2d 853, 857 (9th Cir. 1968). The term seems more conclusory than instructive in resolving the question.

There is not enough evidence in this record to pass judgment on the Fourth Amendment issue of the admissibility of the identification, even if we were inclined to reach conclusions in the absence of findings by the judge. It seems agreed that the Mustang was stored on property owned by the defendant's mother-in-law. The defendant's wife testified that she had the use of the Mustang and did use it after the defendant's pretrial incarceration until she had the Mustang towed to her mother's property when it became inoperable at another location. There was testimony that the motor vehicle was parked approximately forty feet from a public way, and visible from the public way. It was said to have been parked "near the driveway." Despite this evidence, we are not aware of certain possibly important facts, such as where the motor vehicle was in relation to the

house, how far it was from the driveway, whether its interior could be seen from the driveway, and the extent to which the driveway might have been a normal means of entrance and egress from the house.   Because the defendant elected not to testify at the trial and there was no voir dire hearing, we have no testimony from the defendant on whatever expectations of privacy, if any, he may have reasonably had about the area where the Mustang was stored.[4]

The case is remanded to the Superior Court where a hearing should be held on the reasonableness of the search.   The need to remand the case is unfortunate because it could have been avoided had the assistant district attorney obtained a search warrant or had the judge granted the defendant's request for a hearing on his claim that there had been an unreasonable search.   If the judge hearing the matter should conclude that the testimony concerning the victim's identification of the blue Mustang on the property of the defendant's mother-in-law must be suppressed, a new

[4] Because we conclude that there should be a hearing to determine the reasonableness of the search, we decline to speculate on the result of that hearing.   We do note two opinions dealing with warrantless searches of driveways that may be instructive.   In *United States* v. *Humphries,* 600 F.2d 1238, 1245 (9th Cir. 1979), vacated on other grounds, 445 U.S. 956 (1980), the court said:   "Considering all of the circumstances surrounding [the officer's] entry into the driveway and identification of the Monte Carlo as the automobile previously stopped by BIA agents near the crash site, we conclude that the entry and identification did not violate any reasonable expectation of privacy held by [the defendant].   The auto was visible from the street.   It does not appear from the record that the driveway was enclosed by a fence, shrubbery or other barrier.   [The officer] did not move bushes or other objects in order to make his observations."

In *United States* v. *Magana,* 512 F.2d 1169, 1171 (9th Cir.), cert. denied, 423 U.S. 826 (1975), the court said:   "A driveway is only a semi-private area.   The expectation of privacy which a possessor of land may reasonably have while carrying on activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street.   It would be equally unwise to hold, as a matter of law, that all driveways are protected by the Fourth Amendment from all penetrations by police officers as to hold that no driveway is ever protected from police incursions.   The test in each case should be that of reasonableness, both of the possessor's expectations of privacy and of the officers' reasons for being on the driveway."

trial would be required. In such a case, the judge should consider and decide whether admission of the victim's incourt identification of the motor vehicle would be proper on the ground that the identification would rest "on an independent recollection of her initial encounter with the [vehicle], uninfluenced by the pretrial [identification]" of the vehicle. See *United States* v. *Crews*, 445 U.S. 463, 472-473 (1980).

The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*