Commonwealth *vs*. Julius Simmons.

Barnstable. February 7, 1984. — May 22, 1984.

Present: Wilkins, Abrams, Nolan, & Lynch, JJ.

*Search and Seizure*, Automobile on private property.

No reasonable expectation of privacy of a criminal defendant was violated
where a rape victim, accompanied by two police officers, viewed the
exterior and plainly visible interior of the defendant's automobile, which
was parked on private property near a driveway providing access from
a well-travelled public road to a path leading to the front entrance of
the house located on the property. [48-51]

Indictments found and returned in the Superior Court on
October 26, 1977.

Following the decision of this court in 383 Mass. 46 (1981),
there was a hearing before *Umana*, J., respecting the suppres-
sion of evidence.

The Supreme Judicial Court granted a request for direct
appellate review.

*Brownlow M. Speer* (*Thomas J. Herbert* with him) for the
defendant.

*Patrick M. Butler,* Special Assistant District Attorney, for
the Commonwealth.

Lynch, J. The defendant was found guilty of rape, armed
assault with intent to murder, and assault and battery by means
of a dangerous weapon. Shortly before the trial was to begin,
the police took the victim to view the defendant's car, which
was parked near the driveway of his mother-in-law's house.
No search warrant was obtained.

The defendant was previously before this court, arguing that
the identification procedure employed was impermissibly
suggestive and that the "search" of the vehicle was unreason-
able. In *Commonwealth* v. *Simmons*, 383 Mass. 46 (1981),
we rejected the defendant's contention that due process princi-
ples were violated by the one-to-one "confrontation" between
the victim and the defendant's car. *Id*. at 48. However, we
remanded the case to the Superior Court for a hearing on the

reasonableness of the search. *Id.* at 55-56. After hearing, the trial judge denied the defendant's motion to suppress the identification. The defendant again appealed, and we granted his application for direct appellate review. We now affirm the trial judge's denial of the defendant's motion to suppress.

In summarizing the relevant details,[1] we rely heavily upon the judge's subsidiary findings of fact, which "must stand unless they are clearly erroneous." *Commonwealth* v. *Cadoret,* 388 Mass. 148, 150 (1983). *Commonwealth* v. *Accaputo,* 380 Mass. 435, 448 n.18 (1980). In October, 1977, the victim was walking along a public way in Hyannis, with the intent of hitchhiking home. A man driving a light blue car stopped and offered her a ride. The driver proceeded to take her to a secluded wooded area, to stab and then rape her, and finally to strangle and threaten to kill her if she said anything about the incident.

The victim was questioned by police that evening while in the hospital. Although she was still in a state of shock, she managed to describe her attacker's car, characterizing it as a "kind of a Volkswagen," "light blue," with "two seats in front, with a gear shift on the floor," and with wires hanging down from underneath the radio. At a subsequent time she was also able to identify her assailant from a book of 192 photographs.

At a pretrial interview with the prosecutor in charge of the case, the victim again described the motor vehicle. She recalled its color, the bucket seats, the stick shift, the wires hanging out of the radio, and other characteristics of the car's interior. However, she identified the automobile as a "Mustang." On account of this potential inconsistency in her identification, the prosecutor directed two police officers to accompany the victim to a house on Falmouth Road in Hyannis, to "look at a vehicle." This visit was to the property of the mother-in-law of the defendant. However, the victim was not told whose car she was going to see nor where she was going.

The two officers and the victim arrived at the property around noon. One officer knocked several times on the front door of the residence, and received no response. The other officer and the victim proceeded up the driveway to look at a vehicle, a

---

[1] A more complete discussion of the facts appears in *Commonwealth* v. *Simmons, supra.*

light blue Mustang automobile which was located between one and two feet from the driveway, directly across from a flagstone path leading to the front door. While standing in the driveway, the victim spent a few minutes looking at the vehicle's interior. Neither the victim nor the officer left the driveway, nor did they open any doors or windows of the vehicle or touch it in any manner. After about five minutes, the victim and the two officers left the property. At that time and at trial, the victim identified the vehicle as being the one driven by her assailant.

The property in question is located adjacent to Route 28, a heavily traveled road which serves as one of the main access routes to and from Hyannis. The property is also abutted to the east by a public parking area. There were no fences, shrubs, or gates on the property preventing access or viewing of the vehicle from Route 28 or the adjoining parking area, and its exterior could be clearly seen from either vantage point. The vehicle's interior could be seen from the driveway, and portions of it could be seen from a distance of from five to six feet. There were no "No Trespassing" signs on the property, however there was a "Beware of Dog" sign located on the garage at the top of the driveway.

Prior to his arrest in October, 1977, the defendant would occasionally visit his mother-in-law and park his car in the driveway; by his own account, he never parked the car in the garage. During the summer, boarders lived in the house; they would walk up the driveway, which was the normal way to reach the path leading to the front door, and routinely pass by the car. Also according to the defendant's testimony, he would often leave the car unlocked in public parking lots, due to a defect in one of its doors.

After the defendant's arrest, his wife used the car without restriction. During this time it became disabled and was towed to the location where it was viewed by the victim. The defendant had no conversations with his wife or his mother-in-law regarding the use of the car after his arrest, its towing and placement on the property, or its status from the date it was placed on the property until the defendant's trial in February, 1978.

In contending that the viewing of the car by the victim should not cause her identification testimony to be excluded, the Commonwealth makes two basic arguments. First, it is argued that an action by police officials which does not intrude upon a legitimate expectancy of privacy is not a "search" within the context of the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights and that the victim's nonintrusive viewing of the interior of the defendant's vehicle from a point on the driveway did not violate any such expectation of privacy held by the defendant. Second, the Commonwealth contends that, even if a constitutionally impermissible search occurred, the defendant lacks standing to object to a search on his mother-in-law's property of a car over which he had relinquished effective control. It is unnecessary for us to reach this latter argument, since we find that no reasonable expectation of privacy was compromised by the viewing of the vehicle by the victim and the police officers.

In this area of Fourth Amendment law, the basic determination to be made is whether a defendant's expectation of privacy "is one which society could recognize as reasonable." *Commonwealth* v. *Cadoret*, 388 Mass. 148, 150 (1983), quoting *Commonwealth* v. *Podgurski*, 386 Mass. 385, 388 (1982), cert. denied, 459 U.S. 1222 (1983). See *Rakas* v. *Illinois*, 439 U.S. 128, 151 (1978) (Powell, J., concurring). The circumstances surrounding the search at issue must be analyzed; no single factor or characteristic will typically determine a search's validity. It is first incumbent on a court to examine the physical milieu in which a search takes place; in this case, the driveway of residential property. "A driveway is only a semiprivate area. The expectation of privacy which a possessor of land may reasonably have while carrying on activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street." *United States* v. *Magana*, 512 F.2d 1169, 1171 (9th Cir.), cert. denied, 423 U.S. 826 (1975), cited in *Commonwealth* v. *Simmons*, 383 Mass. 46, 55 n.4 (1981). See *United States* v. *Humphries*, 636 F.2d 1172, 1179 (9th Cir. 1980). Cf. *Commonwealth* v. *Colella*, 360 Mass. 148, 149 (1971). In the instant case, the

vehicle was clearly visible from Route 28, a busy roadway, and from the adjacent public parking area. The driveway was not enclosed by trees, a fence, shrubbery, or any other obstructions. Further, the driveway was the normal means of access to the mother-in-law's home, along which visitors and tenants on the property would pass on the way to the front door. We therefore conclude that the vehicle was not in a location that would give rise to a reasonable expectation of privacy.

The defendant attaches great weight to the fact that the viewing of the interior of the vehicle occurred on private property (the driveway). The fact that the officers may have committed a technical·trespass does not create a Fourth Amendment violation when no expectation of privacy exists. As the United States Supreme Court has noted on several occasions, "the Fourth Amendment protects people, not places. . . . [t]he premise that property interests control the right of the Government to search and seize has been discredited." *Katz* v. *United States*, 389 U.S. 347, 351-353 (1967), and cases cited. See *United States* v. *Santana*, 427 U.S. 38, 42 (1976). Although a driveway may be private according to common law concepts of property, it need not be for purposes of the Fourth Amendment. *United States* v. *Humphries, supra.*

Further assessment of the defendant's expectation of privacy is aided by examination of the physical object "searched," i.e., an automobile. The United States Supreme Court has repeatedly recognized that the expectation of privacy in "an automobile . . . [is] significantly different from the traditional expectation of privacy and freedom in one's residence." *United States* v. *Martinez-Fuerte*, 428 U.S. 543, 561 (1976), and cases cited. *United States* v. *Chadwick*, 433 U.S. 1, 12 (1977). The diminished Fourth Amendment protection accorded automobiles derives from their continual exposure to public scrutiny: "Automobiles operate on public streets; they are serviced in public places; they stop frequently; they are usually parked in public places; their interiors are highly visible; and they are subject to extensive regulation and inspection." *Rakas* v. *Illinois, supra* at 154 n.2. However, this is not to say that there cannot be a reasonable expectation of privacy in certain areas of the interior of an automobile otherwise placed in the public view. As we

observed in *Commonwealth* v. *Podgurski*, 386 Mass. 385, 389 (1982), "[s]uch an expectation clearly exists in those areas which would be otherwise free from observation except by physical intrusion of some sort. . . . In the typical passenger vehicle, these places must include at least the trunk, the glove compartment, closed containers in the interior, and in most cases, the area under the seats." See *Commonwealth* v. *Hason*, 387 Mass. 169, 173 (1982).

In the instant case, no physical intrusion of any sort was committed. The victim's identification of the defendant's vehicle was accomplished solely by her observation of the automobile's exterior and certain aspects of its interior which were in plain view through the car's windows. The defendant could not have maintained an expectation of privacy as to the car's exterior since it could be easily seen from the adjoining road and public parking area; by his own testimony, the defendant never availed himself of the opportunity to use the garage at the top of the driveway. As for the car's interior, a similar absence of a reasonable expectation of privacy is evident. Visitors to the defendant's mother-in-law's house and her boarders would pass by the car on the way to the front door. The defendant would frequently leave the car unlocked in public parking areas; for a period of time, the car was left in an inoperable condition in the student parking area where the defendant's wife attended college. After his arrest, the defendant placed no restrictions on where his wife should park the car. We can find no reasonable expectation of privacy connected with the object of the victim's and the officers' "search," the exterior and plainly visible interior of the defendant's vehicle.

A third factor to be weighed in the expectation of privacy calculus is whether the defendant "took normal precautions to maintain his privacy — that is, precautions customarily taken by those seeking privacy." *Rakas* v. *Illinois, supra* at 152. See, e.g., *United States* v. *Chadwick, supra* at 11 ("By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination"). We have already commented on the failure of the defendant to garage the vehicle or to conceal it

in any way or to place any limitations on where it should be parked. In *United States* v. *Hersh,* 464 F.2d 228 (9th Cir. 1972), a case in which a "search" consisting of a police officer on a front porch glancing through a window of the defendant's home was upheld, the court noted the absence of a number of measures which would normally create an inference of privacy: "No Trespassing" signs, fences or other enclosures, and bushes or other objects obscuring one's view. *Id.* at 230. Such precautions were similarly lacking in the instant case, a fact that is especially probative given the property's location adjacent to a major roadway and a public parking area. Further, the defendant's relinquishment of any control over the vehicle's usage or location is significant, since the "already diminished expectation of privacy that attaches to motor vehicles is still further attenuated when the owner [has] given over possession to another for the other's own uses." *United States* v. *Dall,* 608 F.2d 910, 915 (1st Cir. 1979), cert. denied, 445 U.S. 918 (1980). Cf. *Commonwealth* v. *Hall,* 366 Mass. 790, 795 (1975).

Based on our evaluation of the three factors of the place, the property searched, and the precautions taken, we conclude that no reasonable expectation of privacy was violated by the victim's and the police officers' viewing of the exterior and plainly visible interior of the defendant's vehicle. We reach this conclusion both under the Fourth Amendment and art. 14. Although in another context we have recognized that the latter provision "may afford greater protections to a person in certain circumstances than those required by Federal decisions interpreting the Fourth Amendment," *Commonwealth* v. *Ortiz,* 376 Mass. 349, 358 (1978), there has been no demonstration that such extended protection would be appropriate here. We find no error in the judge's denial of the defendant's motion to suppress the victim's identification testimony.

*Judgments affirmed.*