COMMONWEALTH *vs.* A JUVENILE (NO. 2).

Plymouth. September 4, 1991. - November 12, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Search and Seizure*, Automobile on private property, Exigent circum-
stances, Expectation of privacy, Plain view, Probable cause. *Constitu-
tional Law*, Search and seizure. *Probable Cause.*

Police officers investigating a motor vehicle homicide properly made a war-
rantless inspection of the exterior of an automobile parked in a private
driveway, clearly visible from a public way, in circumstances where
there was no reasonable expectation of privacy in the driveway. [160-
162]
Police officers investigating a motor vehicle homicide had probable cause
to seize an automobile parked in a private driveway, and exigent cir-
cumstances arising from the mobility of the vehicle justified the seizure
of the vehicle without a warrant. [162-166]

COMPLAINTS received and sworn to in the Brockton Divi-
sion of the District Court Department on February 9, 1987,
and February 27, 1987, respectively.

On transfer to the jury session of the Wareham Division a
motion to suppress evidence was heard by *Richard P. Kelle-
her*, J., and the case was tried before *W. James O'Neill*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

The case was submitted on briefs.

*Raymond E. Arabasz* for the defendant.

*William C. O'Malley*, District Attorney, & *Linda M.
Fleming*, Assistant District Attorney, for the Com-
monwealth.

ABRAMS, J. A young woman was killed in a hit-and-run
automobile accident in Bridgewater. Three days after the ac-
cident, police, without a warrant, seized the a juvenile's auto-
mobile, parked in the driveway of the juvenile's home, as the

automobile involved in the accident. Thereafter, the juvenile was found delinquent on charges of negligent motor vehicle homicide, and motor vehicle homicide while under the influence of alcohol.[1]

Prior to trial, the juvenile filed a motion to suppress evidence obtained as a result of the seizure of his automobile. The motion was denied. On appeal, the juvenile argues, as he did at the hearing, that the warrantless seizure of his automobile violated his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.[2] We transferred the appeal to this court on our own motion. We conclude that there was no error in the denial of the juvenile's motion. We affirm the adjudication of delinquency.

1. *Facts.* The motion judge found the following facts. At approximately 6:30 P.M. on February 2, 1987, an eighteen year old woman was hit by an automobile as she walked along Spring Street in Bridgewater. The driver of the automobile did not stop to aid the woman or to identify himself. The woman died the next day as a result of her injuries.

Witnesses at and near the scene told investigating police officers that two automobiles were in the vicinity at the time of the accident. Each witness remembered seeing a white automobile, which some of them speculated might have been a Lincoln. As a result of the witnesses' statements, police initially focused their efforts on a search for a white Lincoln. One witness also recalled a small, black automobile. The police collected paint chips at the scene of the accident; the

---

[1]Although the juvenile also was charged with leaving the scene of an accident resulting in personal injury, the jury determined that this charge was not proved.

[2]Article 14 "may afford greater protections to a person in certain circumstances than those required by Federal decisions interpreting the Fourth Amendment." *Commonwealth* v. *Simmons*, 392 Mass. 45, 51, cert. denied, 469 U.S. 861 (1984), quoting *Commonwealth* v. *Ortiz*, 376 Mass. 349, 358 (1978). As in *Simmons*, however, there has "been no demonstration that such extended protection would be appropriate" in this case. *Simmons, supra* at 51. We therefore consider the Federal and State issues together.

chips were dark-colored on one side and light-colored on the other.

Three days after the accident Mark Lovell (Lovell), the seventeen year old son of one of the investigating officers, told the police that an individual named Steve Mason told him (Lovell) that, on the evening of the accident, he (Mason) saw the juvenile driving a small, black automobile toward Spring Street.[3] Lovell further recounted that he spoke to the juvenile the day after the accident. The juvenile told Lovell that the juvenile's automobile had a new dent in it, that the juvenile did not know how the automobile had been dented, and that the juvenile had been "wasted" the previous evening.

The police subsequently determined that the juvenile owned a black Chevrolet Camaro. The next day, Officer Robert Gray went to the juvenile's home and saw a black Camaro parked in the driveway. From his vantage point in the road, Gray's view of the automobile was unobstructed, and the area was well lit. Gray saw damage to the front end of the automobile, on the right side; this damage included "light spots" on the dark paint. Gray then left the area and returned with Officer Scott Lovell. The Camaro had not moved. The two officers viewed the automobile from the same position that Gray had occupied earlier. Shining a spotlight on the automobile, Officer Lovell observed front end damage.

More officers arrived on the scene. A number of them went on to the driveway of the juvenile's home. The officers examined the exterior of the automobile. They found chipped paint, fabric fibers embedded in the paint around the right headlight, a dent in the hood and one in the roof, and fabric fibers at the right edge of the roof. The paint on the automobile was black, but the layer underneath was light in color.

---

[3]The judge found that it was Mark Lovell who saw the juvenile driving a black automobile toward Spring Street near the time of the accident. The Commonwealth concedes that Mason told Lovell that Mason made the observations.

The police sergeant in charge of the investigation then ordered his officers to seize the automobile to preserve evidence. The police notified the juvenile's parents, who apparently were home at the time, that the juvenile should report to the police station. The police then obtained a search warrant.[4] The police subsequently removed paint chips, fragments, and fibers from the exterior of the Camaro and sent them to the State police laboratory for analysis.

2. *The search.* The juvenile does not contest that the police officers were within their legal rights to inspect the automobile from the road. There is no search in the constitutional sense if a police officer, from a position in which he is legally entitled to be, observes incriminating evidence in plain view. "[T]here is no reason [the police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen." *Commonwealth* v. *Sergienko,* 399 Mass. 291, 294 (1987), quoting *Texas* v. *Brown,* 460 U.S. 730, 740 (1983). See *Commonwealth* v. *Simmons,* 392 Mass. 45, 48-49, cert. denied, 469 U.S. 861 (1984). See. also 1 W.R. LaFave, Search and Seizure § 2.3 (g) at 417 (1987) ("Certainly no justified expectation [of privacy] is present when . . . the incriminating objects or activities were readily visible to persons on neighboring lands"). The officer's use of a spotlight in no way alters this analysis. See *Texas* v. *Brown, supra* at 730; *Commonwealth* v. *Sergienko, supra* at 294; *Commonwealth* v. *Cavanaugh,* 366 Mass. 277 (1974).

When the police officers entered on the private driveway, they inspected the exterior without a warrant. That action violated no "expectation of privacy . . . 'which society could recognize as reasonable.' " *Simmons, supra* at 48, quoting

---

[4]At oral argument, the Commonwealth conceded that the warrant, obtained after the seizure of the automobile, was of no effect. A warrant cannot retroactively justify a prior search or seizure that is unconstitutional. Cf. *United States* v. *Guarino,* 729 F.2d 864, 869 (1st Cir. 1984), citing *Bumper* v. *North Carolina,* 391 U.S. 543, 548 n.10 (1968). In deciding the juvenile's appeal, we disregard the warrant. Therefore, we do not address the juvenile's arguments that the warrant was procedurally defective.

*Commonwealth* v. *Cadoret*, 388 Mass. 148, 150 (1983). See *Commonwealth* v. *Podgurski*, 386 Mass. 385, 388 (1982), cert. denied, 459 U.S. 1222 (1983). There was, therefore, no unreasonable search. See *Sergienko*, *supra* at 294 (because police officer's observation of evidence in plain view implicates no privacy interest, there is no search in constitutional sense). See also *Rakas* v. *Illinois*, 439 U.S. 128, 151 (1978) (Powell, J., concurring).

In *Simmons* we said that no reasonable expectation of privacy was frustrated where a rape victim was brought by police onto a private, residential driveway to view the exterior and visible interior of the defendant's automobile. We based our conclusion on "both . . . the Fourth Amendment and art. 14 [of the Massachusetts Declaration of Rights]." *Simmons*, *supra* at 51. In *Simmons*, as in the case at bar, the automobile was parked in a private driveway; the driveway and the automobile on it were clearly visible from a public way; the driveway was the normal route by which to approach the front door of the residence; no intrusion into the automobile was required; there was a garage at the end of the driveway, but the defendant did not use it; and the owner of the automobile had taken no other steps to conceal the parked automobile from public view. *Id.* at 46-47. "A driveway is only a semi-private area." *Id.* at 48, quoting *United States* v. *Magana*, 512 F.2d 1169, 1171 (9th Cir.), cert. denied, 423 U.S. 826 (1975). See *United States* v. *Ventling*, 678 F.2d 63 (8th Cir. 1982); *United States* v. *Humphries*, 636 F.2d 1172 (9th Cir. 1980), cert. denied, 451 U.S. 988 (1981). "In the course of urban life, we have come to expect various members of the public to enter upon such a driveway . . . . If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so." *State* v. *Corbett*, 15 Or. App. 470, 475 (1973). The degree to which a possessor of a driveway may reasonably expect that his activities thereon are private "will generally depend upon the nature of the activities and the degree of visibility from the street." *Simmons*, *supra* at 48. The warrantless view of

the juvenile's automobile is governed squarely by the rule in *Simmons* — notwithstanding the juvenile's efforts to distinguish the two cases.[5]

3. *The seizure.* The warrantless seizure "invade[d] the [juvenile's] possessory interest" in his automobile in a way that the search did not. *Horton* v. *California*, 496 U.S. 128, 134 (1990). A warrantless search or seizure is presumptively unreasonable unless it falls under a recognized exception to the warrant requirement. *Camara* v. *Municipal Court of San Francisco*, 387 U.S. 523, 528-529 (1967). *Commonwealth* v. *Antobenedetto*, 366 Mass. 51 (1974). A warrantless seizure also must be based on probable cause. See *California* v. *Acevedo*, 111 S. Ct. 1982, 1986 (1991), citing *Carroll* v. *United States*, 267 U.S. 132, 151 (1925). See *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982). The judge found that "the police officers had probable cause to seize the juvenile's [automobile] without a warrant." There was no error.

"Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949), quoting *Carroll* v. *United States*, *supra* at 162. The police learned that a small, black automobile had been in the vicinity of the accident. They also had information from Mark Lovell that the juvenile owned a black automobile and that a named person (Mason) saw the juvenile headed in the direction of the accident site at the relevant time. Front-end damage to the auto-

---

[5]One of the juvenile's arguments merits brief discussion. The juvenile contends that the driveway in *Simmons* abutted a major roadway and a public parking area. The police, however, have a right to be on any public way — regardless of its size or volume of traffic. Likewise, an individual who lives on a relatively small public road has no greater expectation of privacy than one who lives on a large public road. Absent some effort to conceal the driveway from public view, the relative seclusion of the neighborhood does not heighten an individual's expectation of privacy in a driveway.

mobile further corroborated Lovell's account of his conversation with the juvenile.[6] Paint chips gathered at the accident scene appeared to match the paint missing from the juvenile's automobile. Finally, both the front-end damage and the fibers found around the right headlight and the roof were consistent with the kind of damage likely to result from the accident under investigation. Cf. *Commonwealth* v. *Rand*, 363 Mass. 554, 560 (1973) ("The physical appearance of the [automobile], its proximity to the scene of the hit and run, and the damage to its front end which was consistent with the type of damage expected to the hit-and-run vehicle provided sufficient nexus between the incriminating evidence in plain view and the hit-and-run accident to constitute probable cause to search the automobile for further evidence of the hit and run").

The Commonwealth also must establish that the police were faced with some recognized exception to the warrant requirement — in this case, exigent circumstances. The inherent mobility of an automobile can supply the exigency required to justify a warrantless search and seizure on probable cause. See *Chambers* v. *Maroney*, 399 U.S. 42 (1970); *California* v. *Acevedo*, *supra*. See also *Cavanaugh*, *supra* at 277. "Generally, less stringent warrant requirements have been applied to [automobiles]." *Cardwell* v. *Lewis*, 417 U.S. 583, 589-590 (1974). This is because "a[n automobile] is readily movable." *Id.* at 590, quoting *Chambers*, *supra* at 50-51.[7]

---

[6]In his suppression motion below, the juvenile argued that the information supplied by Lovell could not be used to support a determination of probable cause because it lacked the requisite indicia of reliability. The juvenile does not argue that issue on appeal. It is, therefore, deemed waived. See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150-151 n.22 (1980), cert. denied, 451 U.S. 973 (1981); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[7]Federal courts, as well as State courts, generally apply the automobile doctrine to unattended, parked automobiles — especially where the police are uncertain of the owner's whereabouts. See, e.g., *United States* v. *Muhammad*, 658 F.2d 249 (4th Cir. 1981), cert. denied, 456 U.S. 947 (1982); *United States* v. *Farnkoff*, 535 F.2d 661, 666 (1st Cir. 1976) ("the car was parked on a public street and could readily have been removed by appellant [who was still at large] or someone acting for him"); *United*

Relying on contentions similar to those accepted in *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971),[8] the juvenile argues there were no exigent circumstances. The present case, however, is distinguishable from *Coolidge* in two critical respects. First, in *Coolidge*, "the police had known for some time of the probable role of the . . . [automobile] in the crime." *Coolidge, supra* at 460. In the case at bar, the police did not have probable cause to seize the automobile until they saw it in the driveway. Cf. *United States* v. *Milhollan*, 599 F.2d 518, 526 (3d Cir.), cert. denied, 444 U.S. 909 (1979) (*Coolidge* does not negate exigency where police did not have probable cause in advance); *United States* v. *Vento*, 533 F.2d 838, 866 (3d Cir. 1976). Second, in the present case, unlike in *Coolidge*, the juvenile was not in custody at the time of the seizure, and there is no evidence that the police knew of his whereabouts.

The juvenile asserts that the mobility of the automobile cannot supply the requisite exigency because he had four days from the date of the accident to destroy or relocate the evidence and did not do so. The juvenile contends further that there was no evidence that he or anyone connected to him was aware that the police were interested in his automobile. This argument is unpersuasive. First, the juvenile was not in custody, and the police had no idea of his whereabouts. Second, the mere presence of the automobile in the driveway does not establish that the juvenile did not intend

*States* v. *Bozada*, 473 F.2d 389 (8th Cir.), cert. denied, 411 U.S. 969 (1973).

[8]In *Coolidge*, the Supreme Court held unconstitutional the warrantless seizure of two automobiles from a private driveway. The case since has been overruled on grounds not directly relevant here by *Horton, supra* (no inadvertence required for application of plain view exception to warrant requirement).

Later cases also suggest that the *Coolidge* court took an overly narrow view of the automobile exigency doctrine. See *Cardwell, supra*, at 594 (that defendant's automobile was seized in public parking lot, while defendant was in police custody, does not diminish exigency). See also *California* v. *Carney*, 471 U.S. 386, 393 (1982) (though motor home had many characteristics of residence, automobile doctrine applied because "motor home was readily mobile").

to move it. Even if he had not planned to relocate the Camaro, the juvenile could have changed his plans. The police, therefore, were justified in their concern that the automobile might be moved at any moment.

The juvenile also contends that the police could have posted a guard while officers left to apply for a warrant. That argument has been rejected by the United States Supreme Court. "For constitutional purposes, we see no difference between on the one hand seizing and holding a[n automobile] before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Cardwell, supra* at 594, quoting *Chambers* v. *Maroney, supra* at 52. See *United States* v. *Evans*, 481 F.2d 990, 994 (9th Cir. 1973) (as to automobiles, "standing guard . . . represents the same interference with property rights" as a seizure).[9]

"The leeway now allowed the police to conduct immediate searches of automobiles in lieu of holding them pending a warrant . . . is based on Supreme Court cases emphasizing the special nature of automobiles and the lesser expectation of privacy one may have with respect to them" (citations omitted). *Commonwealth* v. *Hall*, 366 Mass. 790, 803-804 n.17 (1975). Cf. *Chambers* v. *Maroney, supra* at 51-52. In the present case, the officers could see the exterior of the automobile, which was parked in plain view. The seizure thus involved no incremental intrusion on the juvenile's privacy.

---

[9]Courts generally require that police secure residences by posting guards rather than searching immediately on obtaining probable cause. See *Commonwealth* v. *Hall*, 366 Mass. 790, 803-804 (1975). See also *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), citing *Hall, supra*; *United States* v. *Jeffers*, 342 U.S. 48, 52 (1951); *United States* v. *Goldenstein*, 456 F.2d 1006, 1010 (8th Cir. 1972), cert. denied sub nom. *Ray* v. *United States*, 416 U.S. 943 (1974); Note, Police Practices and the Threatened Destruction of Tangible Evidence, 84 Harv. L. Rev. 1465, 1474-1476 (1971). Cf. *Segurra* v. *United States*, 468 U.S. 796, 810 (1984). The rationale is that the police should not be allowed to intrude on the privacy of homes without the authorization of a neutral and detached magistrate. See *Payton* v. *New York*, 445 U.S. 573, 586 n.24 (1980), citing *Johnson* v. *United States*, 333 U.S. 10, 13-14 (1943).

Finally, the juvenile argues that the Commonwealth cannot claim exigent circumstances in this case because, according to the juvenile, the one-day delay in obtaining a warrant constituted "deliberate and unreasonable delay." *Commonwealth* v. *Forde*, 367 Mass. 798, 802 (1975). This argument is without merit. The Commonwealth is not relying on the warrant. The police seized the automobile at approximately the time they determined that they had probable cause. There was no delay.

The adjudications of delinquency are affirmed.

*So ordered.*