Toomey, J.
Facts
1.Having responded to a call directing him to the scene of the alleged crime, Dracut Police Detective James Wagner was informed by the victim, at approximately 3:00 a.m. on September 16, 1995, that:
a. she had been sexually assaulted:
b. the incident had occurred between 2:00 a.m. and 2:30 a.m. on September 16, 1995;
c. the assailant was shorter than the Detective (who was 6’2"), had long red hair and facial hair, wore a red plaid jacket, and had a hard pack (color red and white) of cigarettes in his jacket pocket;
d. the assailant’s voice sounded like, and his appearance looked like, her father’s “friend, Stephen”; and
e. the assailant had told the victim that his name was “John.”
2. The victim’s father informed the Detective, at about the same time, that the “Stephen” to whom the victim had alluded was Stephen Courtemarche whose girlfriend resided at 484 Rogers Street in Lowell.
3. The Detective arranged for the victim to be transported to a local hospital where, at about 4:45 a.m. on September 16, 1995, her father — who had driven by 484 Rogers Street en route to the hospital— informed the Detective that a vehicle, known to him to be owned by Stephen Courtemarche, was then at the 484 Rogers Street address.
4. The Detective requested, through Dracut dispatch, that Lowell officers meet him at 484 Rogers Street. At 5:05 a.m. the Detective and Lowell officers assembled at 484 Rogers Street and the Detective informed the Lowell police of all the information he had acquired. The group entered the yard, walked along the driveway and saw the defendant and two others seated on the exterior stairs leading to a porch (from which access to the interior house could be obtained).
5. The defendant had long red hair, wore a red plaid jacket and otherwise matched the description of the assailant that the victim had earlier provided to the Detective. When asked by the Detective, who was standing on the driveway, whether he was Stephen Courtemarche, the defendant said, “No, I am John Smith.” Defendant also denied ownership of the vehicle and asserted that he possessed no identification.
6. The Detective fully informed the defendant of his Miranda rights. The defendant stated that he understood his rights and would answer the Detective’s questions. When informed that the victim’s father had directed the detective to the 484 Roger’s Street address, the defendant conceded that he was not “John Smith,” admitted that he was Stephen Courtemarche, and claimed that, at 2:00 a.m., he was at the Rogers Street location.
7. At about 5:20 a.m., the Detective informed the defendant that he was under arrest, handcuffed him and immediately placed him in the custody of the Lowell officers. The latter placed him in their cruiser, *39 transported him to the Lowell Police station and “booked” him there in accordance with Lowell police protocol. The process included a Lowell Police Department booking sheet, telephone call form and photograph. After the Lowell booking, the defendant was released to the custody of the detective who transported him to the Dracut Police station for further processing.
8. At the Dracut station, at approximately 7:10 a.m., the defendant was again advised of his Miranda rights and waived them. At about 7:25 a.m., he signed a consent form authorizing the Dracut police to search his vehicle (which had been towed to Dracut).
9. In response to interrogation by the Dracut Police, the defendant denied any involvement in the alleged assault, claimed to have been driving aimlessly between Manchester, New Hampshire and Lowell, Massachusetts during the early morning hours of September 16, 1995 and had stopped at Rogers Street at approximately 2:00 a.m.
Discussion
The information obtained by Detective Wagner from the victim and her father, together with his observations of defendant at the rear of484 Rogers Street and defendant’s dissembling with respect to his name, provided him with probable cause to arrest defendant. Gerstein v. Pugh, 420 U.S. 103 (1975).[1]
The Question of Extraterritorial Arrest
The arrest, although mechanically effected by Detective Wagner, was in actuality that of the Lowell officers because they were in the immediate presence of Detective Wagner when he announced that defendant was under arrest, they forthwith took custody of defendant and they “booked” him at the Lowell police facility. In short, the arrest was a Lowell arrest, and Detective Wagner served only as an agent of the Lowell police. His greater familiarity with the circumstances of the offense and the identity of the offender enabled him to aid the Lowell operation. His delivery of custody, almost contemporaneous with his subjugation of defendant, was nothing more than a continuation of the act of arrest he had effected on behalf of the Lowell police. To suggest that the arrest and the delivery were substantially disparate acts is to deny the reality of the whole, and this Court is satisfied that the essence of the operation may be appropriately characterized as a Lowell arrest. There was, therefore, no extraterritorial inadequacy in the arrest of defendant.
The Question of Citizen’s Arrest
Even assuming arguendo that the arrest ought not to be labeled a Lowell arrest and that, therefore, it was ultra vires the Dracut Detective, the arrest, and consequent acquisition of evidence, does not thereby become illegitimate. While the Dracut Detective may not effect an official arrest in Lowell, he may, in appropriate circumstances, occasion a citizen’s arrest. Those circumstances exist at bar.
It is well settled that a police officer has no official authority to arrest outside the jurisdiction of his office (absent, of course, such special circumstances as hot pursuit or cross-designation), but he may exercise the same arrest powers that a private citizen possesses. Commonwealth v. Gullick, 386 Mass. 278 (1982). It is equally firmly established that a private citizen may arrest one whom he has probable cause to believe has committed a felony. Commonwealth v. Kerr, 409 Mass. 384, 287 (1991); Commonwealth v. Dise, 31 Mass.App.Ct. 701, 704 (1991). At bar, as noted supra, the Dracut Detective had abundant probable cause, and his “citizen’s” arrest of defendant in Lowell for the several felonies now under indictment was lawful.
The Question of the Need for a Warrant
To the contention that neither the Dracut Detective nor the Lowell officers ought to have entered the 484 Rogers Street property without a warrant, this Court finds no constitutional violation warranting suppression of evidence. The police entry onto the driveway violated no “expectation of privacy . . . ‘which society could recognized as reasonable.’ ’’ Commonwealth v. Simmons, 392 Mass. 45, 48, cert. denied; 469 U.S. 861 (1984), quoting Commonwealth v. Cadovet, 388 Mass. 148, 150 (1983). We are told by the Supreme Judicial Court that, “[a] driveway is only a semi-private area.” Simmons, 392 Mass. at 48, quoting United States v. Magana, 512 F.2d 1169, 1171 (9th Cir.), cert. denied, 423 U.S. 826 (1975). See also, Commonwealth v. A Juvenile (NO. 2), 411 Mass. 157, 161 (1991). Any expectation of privacy which the defendant may have enjoyed in the driveway is minimized by the fact that it was not his own. As the initial entry onto the driveway violated no reasonable expectation of privacy, the Detective’s “plain Anew” observation of the defendant were equally justifiable. See Commonwealth v. Sergienko, 399 Mass. 291, 294 (1987); A Juvenile, 411 Mass. at 159-61; Simmons, 392 Mass. at 48-50.
Moreover, this Court notes that exigent circumstances attended the probable cause then extant and justified the warrantless entry. The defendant was not in residence at the premises and his vehicle was parked nearby. Thus, his departure may well have been imminent. Furthermore, the time of day did not permit ready access to a warrant issuing authority. Finally, the alleged offenses were very serious (inter alia, rape of a child by force), and defendant had not availed himself of the protective pale of a private dwelling, but rather lounged rvith friends on the back steps in easy view of those on the driveway. In sum, defendant’s expectation of privacy was, at best, minimal, his alleged offense was egregious and his potential for flight was enormous. The impracticality of the police obtaining a warrant, either search or arrest, was manifest. It would have been unreasonable to expect the police to do other than what they in fact did. There *40 was probable cause and exigent circumstances, and, hence, there was no requirement that a warrant be obtained to authorize entry onto the premises or the arrest of the defendant.[2]
Conclusion
For the reasons aforestated, the motions to suppress evidence obtained as a consequence of the arrest of the defendant are DENIED.

 There was no evidence that defendant had any posses-sory interest in the premises at 484 Rogers Street and the circumstances suggested that his privacy interest was not abridged by the police entry onto the property’s driveway. Additionally, the offenses of which he was suspected had no possession component. Defendant, therefore, is ill-positioned to contest the police entry onto the driveway in the yard of 484 Rogers Street. Commonwealth v. Montanez, 410 Mass. 290 (1991); Commonwealth v. Amendola, 406 Mass. 592 (1990)

 See generally, Payton v. New York, 445 U.S. 573 (1980); Steagald v. United States, 451 U.S. 204 (1981).