COMMONWEALTH *vs.* DUANE HURD.

No. 99-P-930.

Franklin. September 18, 2000. - February 16, 2001.

Present: JACOBS, KAPLAN, & SMITH, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Exigent circumstances, Administrative inspection, Expectation of privacy, Curtilage. *Practice, Criminal,* Motion to suppress.

In a cruelty to animals prosecution, the judge correctly concluded that the defendant had an expectation of privacy in his partially fenced-in backyard, which could not be seen from the street, or from the front, porch, or shed doors on the property, and that an animal control officer's warrantless entry into the back yard to make observations was unlawful [14-17]; further, the judge correctly concluded that G. L. c. 129, § 7, did not authorize such an entry [17], and that no exigent circumstances supported an entry by the officer without a warrant [17-18].

COMPLAINT received and sworn to in the Greenfield Division of the District Court Department on February 24, 1998.

A motion to suppress evidence was considered by *Herbert H. Hodos*, J.

An application for an interlocutory appeal was allowed by *John M. Greaney*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Cynthia M. Pepyne*, Assistant District Attorney, for the Commonwealth.

*Jack D. Curtiss* for the defendant.

SMITH, J. On February 24, 1998, the defendant, Duane Hurd, was charged with cruelty to animals in a complaint filed in the Greenfield District Court. G. L. c. 272, § 77. Prior to trial, the defendant filed a motion to suppress all evidence obtained as a result of a search of his premises on January 16, 1998. According to the motion, Edward Abbott, the animal control officer for

the town of Greenfield, walked onto the defendant's land without a search warrant and observed two dogs, one dead and the other dying, in a cage behind the defendant's home. Abbott later returned with a police officer and the dogs were removed from the premises. As a result, the defendant was charged with cruelty to animals.

After an evidentiary hearing, a District Court judge allowed the defendant's motion. A single justice of the Supreme Judicial Court granted the Commonwealth's application for interlocutory review of the District Court judge's order. The single justice transferred the appeal to this court pursuant to Mass.R.Crim.P. 15(a)(2), 378 Mass. 882 (1979). We affirm the allowance of the suppression motion.

We summarize the judge's findings which we supplement with undisputed evidence. *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 312 (1992). Abbott received a telephone call on January 16, 1998, at about 10:15 A.M., from an unidentified person who told him that there was a "dead dog in a hole and another dog with it" at 29 Washington Street in Greenfield. He knew that the defendant lived in the house located at that address.

Abbott drove to the defendant's house and parked his car in the street. The defendant's house does not face the street but, rather, is set at an angle. The front door and the door to the enclosed porch are on the same side of the house and face the length of the driveway. The driveway runs from the street, up a slight incline, to a garage which is at the rear of the lot. There is a sidewalk from the street to the front door, parallel to the driveway. Abbott did not use the sidewalk but rather walked up the driveway and crossed over some grass to the front door. He knocked, but got no answer. He then knocked on the porch door, and again did not get an answer. Abbott noticed that a shed was attached to the rear of the house. He knocked on the shed door and there was no response. Abbott then walked to the corner of the shed, looked around it, and saw a wire cage which appeared to be attached to the shed. Abbott moved to get a better view of the cage, and observed two dogs in the cage, one dead and the other lying on top of it.[1]

Abbott believed that the defendant was employed at a local

---

[1] In addition to the cage, there was also a swimming pool in the back yard. An eight-foot high wooden stockade fence ran from the shed and around the

bank. He went to the bank, but the defendant was not there. Abbott then went to the Greenfield police station, reported what he had seen, and asked for assistance. Abbott and Greenfield police Officer David Payant returned to the Washington Street premises, without a warrant.

Abbott told Payant the location of the cage. Payant walked up the driveway past the end of the house and almost as far as the garage before he could see where the cage was located. He could not tell from that distance whether there was a dead dog in the cage. He then walked over to the cage and observed the condition of the animals.

Payant, followed by Abbott, went to the defendant's front door and knocked. The defendant answered the door and Payant advised him of the Miranda rights. Payant asked the defendant about the dogs. The defendant responded that the dogs belonged to his sixteen-year old son and that it was his responsibility to care for them. Abbott told the defendant that one dog was dead, the other was in poor condition, and that they needed to be removed. The defendant said, "Go ahead, do what you have to do." The dogs were photographed, removed from the cage, and transported to a veterinarian for examination. The dead dog was determined to have died from starvation.

In allowing the defendant's suppression motion, the judge ruled that the cage was within the curtilage of the defendant's home, that it could not be seen from the street or from the front, porch, or shed doors, and therefore the defendant had demonstrated a reasonable expectation of privacy that the cage would remain free from public view. He also found that no exigent circumstances existed that would justify entry to the premises without a warrant. The judge concluded that because the warrantless entry by Abbott onto the property and his subsequent observations of the dogs constituted an illegal search, the suppression motion should be allowed.

On appeal, the Commonwealth claims that there was no search for two reasons: (1) the defendant did not have a reasonable expectation of privacy in the cage and its contents; and (2) the cage was in plain view and when Abbott observed it he was properly on the property. In the alternative, the Commonwealth argues that, if there was a search, Abbott, as an animal control officer, had a statutory right under G. L. c. 129, § 7, to enter the

---

back border of the property, ending at the garage. It partially enclosed the pool and the cage.

defendant's premises without a warrant, especially where, as here, exigent circumstances were present.

The question that first must be answered is whether a search took place. Here, the cage was located in the partially fenced-in back yard of the defendant's home. Such an area is considered to be within the curtilage of the home and therefore is entitled to full protection by both the Federal and State Constitutions from unreasonable searches and seizures. *Commonwealth* v. *Straw*, 422 Mass. 756, 759 (1996).

The Commonwealth argues, however, that, even though the cage was within the curtilage, Abbott's observations did not amount to a search because his actions did not intrude upon the defendant's reasonable expectation of privacy in the cage and its contents. See *Commonwealth* v. *Chappee*, 397 Mass. 508, 512 (1986).

It has been held that, "[f]or a search to have taken place, the defendant must have had a subjective expectation of privacy, [in the area or objects searched], and that expectation must have been one that society recognizes as objectively reasonable." *Commonwealth* v. *Pina*, 406 Mass. 540, 544 (1990), and cases therein cited. The defendant has the burden of establishing that the government has intruded upon his reasonable expectation of privacy, thus establishing that a search has taken place. *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 714-715 (1986).

There are several factors that are used "in determining the reasonableness of an individual's expectation of privacy." *Commonwealth* v. *Pina*, *supra* at 545. "The nature of the place where the government activity occurs, while not controlling, is nevertheless relevant, as is the question whether the defendant owned the place, or controlled access to it. Also . . . appropriate . . . is . . . whether the defendant has taken normal precautions to protect his privacy." *Ibid.* (Citations omitted.)

Here, the cage and its contents were located in the defendant's back yard and were partially enclosed by a fence. They could not be seen from the street or from the front, porch, or shed doors. The Commonwealth argues, however, that, because the cage could be seen from the driveway, the defendant did not have a reasonable expectation of privacy, citing *Commonwealth* v. *Simmons*, 392 Mass. 45, 48-51 (1984).

In *Simmons*, the defendant's car was parked in the driveway of his mother-in-law's house. The victim, accompanied by two police officers, walked up the driveway and looked at the

exterior and plainly visible interior of the car. The court noted that "[a] driveway is only a semiprivate area." *Id.* at 48, quoting from *United States* v. *Magana,* 512 F.2d 1169, 1171 (9th Cir.), cert. denied, 423 U.S. 826 (1975). The court ruled that the defendant did not have a reasonable expectation of privacy in his automobile as the automobile was clearly visible from a public highway and from an adjacent public parking area; that "[t]he driveway was not enclosed by trees, a fence, shrubbery, or any other obstruction"; and that "the driveway was the normal means of access to the [defendant's] mother-in-law's home, along which visitors and tenants on the property would pass on the way to the front door." *Id.* at 49. See *Commonwealth* v. *A Juvenile (No. 2),* 411 Mass. 157, 161 (1991).

Here, unlike *Simmons,* the object that was the subject of observations was not in the driveway, but rather in a partially fenced-in back yard. In that location, it was not visible from the public street or even from the front, porch, or shed doors. The driveway was not the normal access to the front door; a sidewalk from the street leading to the front door served that purpose. Considering all the above circumstances, especially the location of the cage, the fact that it could be seen from the portion of the driveway near the garage does not demonstrate that the defendant did not have a reasonable expectation of privacy in the cage. Therefore, we hold that the *Simmons* decision and its progeny do not control this matter and that the defendant did have a reasonable expectation of privacy in the cage and its contents.

The Commonwealth argues that, even if the defendant had a reasonable expectation of privacy in the cage and its contents, there was no search because Abbott was in a place where he was legally entitled to be when he first observed the cage in plain view. The Commonwealth cites *Commonwealth* v. *Sergienko,* 399 Mass. 291, 294 (1987), in support of its argument. In *Sergienko,* the court stated that "a plain view observation involves no intrusion into an area in which the defendant has a reasonable expectation of privacy. As long as no such intrusion occurs, the observation does not rise to the level of a search, and Fourth Amendment limitations are not triggered." *Id.*

A key to a proper plain view observation is that the police make the observation from a position in which they are legally entitled to be. *Commonwealth* v. *A Juvenile* (No. 2), *supra*

at 160 ("There is no search in the constitutional sense if a police officer, from a position in which he is legally entitled to be, observes incriminating evidence in plain view").

The Commonwealth contends that because of G. L. c. 129, § 7, Abbott had a legal right to enter the defendant's premises without a warrant. Therefore, according to the Commonwealth, because Abbott was in a place where he was entitled to be, his plain view observation of the cage and its contents did not constitute a search. We reject the Commonwealth's argument.

General Laws c. 129, § 7, states in relevant part, "For the purpose of inspecting or examining animals or the places where they are kept, . . . [an animal] inspector . . . may enter any building . . . or other place." As the motion judge noted, statutes can no longer convey blanket powers of warrantless entries. See, e.g., *Camara* v. *Municipal Ct.*, 387 U.S. 523, 534 (1967) (administrative inspector may enter private premises without consent only after obtaining search warrant); *Boston* v. *Ditson*, 4 Mass. App. Ct. 323, 327 (1976). See also *Commonwealth* v. *Snell*, 428 Mass. 766, 775 n.4 (1999) ("a statute cannot supersede constitutional safeguards to authorize an otherwise unlawful entry").

The Commonwealth claims that exigent circumstances were presented and, therefore, Abbott was allowed to enter the premises without a warrant. We note that "*Camara* itself . . . listed a number of 'emergency situations' under which prompt inspections without a warrant would not constitute an unreasonable search in violation of the Fourth Amendment. 387 U.S. at 539." *Boston* v. *Ditson, supra* at 328. Those situations "included seizure of unwholesome food, compulsory smallpox vaccination, and summary destruction of tubercular cattle." *Ibid.* No such "emergency situation" was present here.

Further, there was no evidence that a person was in need of immediate assistance because of an imminent threat of death or serious injury. *Commonwealth* v. *DiGeronimo*, 38 Mass. App. Ct. 714, 722-723 (1995). If a rabid dog or a dangerous animal presents an imminent threat of death or serious injury to persons, an animal control officer (or any police officer) may enter premises without a warrant to remove the threat. That was not the situation here.

The Commonwealth maintains that the emergency principle extends to animals. The parties have not presented us with any

Commonwealth *v.* Hurd.

Massachusetts decision on that point.[2] Even were we to assume, without deciding, that the emergency principle does extend to animals, we hold that no such exception applied here. Abbott's actions after observing the condition of the dogs in the cage does not demonstrate that exigent circumstances were present. He did not immediately remove the dogs from the cage but first attempted to find the defendant at his workplace and then sought assistance from the police. From the time he observed the condition of the dogs until he returned to the defendant's premises, he had ample opportunity to obtain a warrant.

For the reasons stated above, we conclude that Abbott's entry onto the defendant's premises without a warrant and his subsequent observations constituted an improper search.[3] Therefore, because of Abbott's improper entry, the subsequent observations and seizures of the dogs by Payant were properly suppressed. *Nardone* v. *United States*, 308 U.S. 338, 341 (1939).

We affirm the allowance of the suppression motion.

*So ordered.*

---

[2]Some other jurisdictions do permit the emergency principle to extend to animals. See, e.g., *Suss* v. *American Soc. for the Prevention of Cruelty to Animals*, 823 F. Supp. 181, 187 (S.D.N.Y. 1993) ("[r]eal immediacy may allow emergency entries to preserve animal life that is threatened because of cruelty"); *Tuck* v. *United States*, 477 A.2d 1115, 1120 (D.C. 1984) (public interest in prevention of cruelty to animals required flexibility in warrant requirement even though exigency involved protection of animal life rather than human life); *People* v. *Thornton*, 286 Ill. App. 3d 624, 630 (1997) (totality of circumstances justified warrantless entry to rescue dog); *State* v. *Bauer*, 127 Wis. 2d 401, 409 (1985) ("exigent standard test applies to situations involving mistreatment of animals").

[3]Because the defendant's consent to Abbott and Payant to remove the dogs was obtained through exploitation of the prior illegal entry, the consent was not voluntary. *Commonwealth* v. *Midi*, 46 Mass. App. Ct. 591, 595 (1999).