In 1996, the defendant pleaded guilty to indictments that charged aggravated rape, armed home invasion, burglary with assault on an occupant, armed robbery, and assault and battery by means of a dangerous weapon. On February 18, 2014, almost eighteen years later, the defendant moved to withdraw his guilty pleas and for an evidentiary hearing. He argued that his pleas were entered neither knowingly nor voluntarily as a result of his attorney's ineffectiveness and that the indictments charging armed home invasion and what he labels unarmed burglary must be vacated because the evidence does not support either charge. The judge, who was not the plea judge, denied the motion without a hearing in a written memorandum of decision. The defendant appealed and moved for reconsideration; the motion judge denied the latter motion. The defendant's appeal from the denial of the motion for reconsideration has been consolidated with his appeal from the denial of the original motion.
Background. We briefly summarize the evidence presented at the plea hearing and before the grand jury, reserving certain details for discussion with the issues raised. Sometime before 1:15 A.M. on May 15, 1995, the defendant used tin snips to cut a screen and enter a first-floor Quincy apartment in which three young women lived. Once inside, the defendant took a bottle of beer from the refrigerator and went into the victim's bedroom. He slashed at least five pairs of the victim's underwear and drank the bottle of beer, remaining in her room for some period of time in the dark.
The victim returned home from work and, after talking to her boy friend on the telephone for about twenty minutes, went into her bedroom around 1:30 A.M. Before she could reach the light switch, the defendant grabbed her from behind, put his hand over her nose and mouth, and put a knife to her throat. The victim grabbed the knife and recognized it as one from her kitchen. She acceded to the defendant's exhortations to let go of the weapon. Over the course of approximately the next thirty minutes, the defendant bound the victim's hands and physically assaulted her as he raped her twice anally, twice vaginally and once orally. The victim heard the knife drop and was able to grab it as she struggled with the defendant, stabbing him at least twice. The defendant punched her in the face; she could hear bones crunching. She continued to hold onto the knife even as it slipped and sliced into her hand. She managed to get to the bedroom door, open it, and run screaming into the hallway.
A roommate came out of another bedroom and saw the defendant in the hallway with his pants down around his knees. There was a shattering and crashing of glass; the defendant had fled through the victim's bedroom window.
The police arrived at the scene. There was a trail of blood on the floor of the apartment and in the victim's bedroom, blood on the bed, an empty beer bottle, and a knife on the floor. At the spot where the roommate had seen the defendant with his pants around his knees, police found a wallet containing the defendant's driver's license.
The victim's face was beaten so badly it looked like she "didn't have a nose." She was hospitalized and underwent major surgery to her right hand, which she could not use for five months.
Within an hour, police found and arrested the defendant at the Braintree address on his driver's license. He had a significant wound to his leg and a wound to his left wrist. In his possession were the victim's paycheck and $291 he had stolen from her. He told police, "I fucked up," and "I only went in for the money. I had to punch her to get out."
Discussion. A guilty plea can be withdrawn only if "it appears that justice may not have been done." Commonwealth v. DeMarco, 387 Mass. 481, 487 (1982), quoting from Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). In the face of an adequate plea colloquy, the defendant bears the heavy burden of demonstrating that he did not knowingly and voluntarily proffer the pleas. On appeal, we can reverse a judge's determination that a defendant failed to meet that burden only where the judge abused his discretion. See, e.g., Commonwealth v. Bowen, 63 Mass. App. Ct. 579, 583-584 (2005). Here, the defendant does not challenge the colloquy, but argues instead that plea counsel's ineffectiveness and the lack of evidence on two indictments warrant relief and that the motion judge should have held an evidentiary hearing on the motion.
1. Ineffective assistance of counsel. The defendant challenges counsel's failure to investigate a defense based on the defendant's alleged impaired mental state, and counsel's failure to seek suppression of evidence seized after police made a warrantless entry onto his property and to seek suppression of the eyewitness identification.
a. Mental state. The defendant claims that counsel should have investigated an insanity defense and sought an evaluation for criminal responsibility in view of the evidence showing that, at the time of the crimes and the plea, the defendant was suffering from "organic brain impairment related to long-term alcohol use and traumatic [head] injury" and that he was in the early stages of multiple sclerosis. The evidence to which the defendant refers is largely contained in his affidavit filed in support of his motion to vacate his plea, more than eighteen years after the plea.
The affidavit recites that he was (1) struck on the head by a car when he crossed the street at the age of eight; (2) kicked in the head multiple times during a fight in 1971; (3) hit multiple times on the head during his childhood with baseballs and during ice hockey; and (4) involved in an automobile accident in 1994, and lost consciousness when an airbag deployed. Apart from the medical records related to the auto accident -- that indicate the defendant was unsure whether he lost consciousness but also that he had no loss of consciousness -- there is no record support for the defendant's claims.
There is, however, evidence to the contrary. The day after his arrest for these offenses the defendant was admitted to Bridgewater State Hospital for an evaluation. That record shows that the defendant acknowledged that he had a drinking problem and a heart problem, but he otherwise reported that he has "always been in good health" and that "he has never had any surgeries nor has he had head injuries, loss of consciousness or seizures." The report's author indicated that there was no evidence of mental illness, a description similar to that of the defendant's own therapist at the time, who described him as having no evidence of loosening associations or thought disorder. In these circumstances, the motion judge was not required to credit the defendant's self-serving affidavit that outlined multiple head injuries and "cognitive decline." See Commonwealth v. Pingaro, 44 Mass. App. Ct. 41, 48 (1997) ; Commonwealth v. Thurston, 53 Mass. App. Ct. 548, 552-554 (2002).
With respect to the failure to investigate a defense based on alcohol impairment, the motion judge correctly determined that the decision on the defendant's motion to suppress effectively removed the viability of any intoxication-based defense. The suppression judge discredited the defendant's claim that he was in a blackout or "rambling" when he spoke to police within an hour of the crime, finding that he was coherent, cooperative, and able to walk steadily; he accurately described to police where his bloody clothing was hidden in the cellar; and laboratory tests at 4:30 A.M. revealed no alcohol or drugs in his system.
The defendant's additional assertion that his mental ability was impaired in 1995 because of the onset of early symptoms of multiple sclerosis is speculative where the evidence adduced by the defendant shows that the disease was not observed in him until about ten years later, in 2005.
To the extent the defendant also argues that counsel was ineffective for failing to raise the defendant's purported mental impairment at sentencing, we reject the argument given the lack of any credible evidence that such impairment existed but for his history of alcoholism, which counsel ably presented. That counsel was effective may be inferred from the imposition of a sentence that was at least fifteen years less than the sentences three different judges had indicated they were likely to impose in earlier plea negotiations, and was also less than that recommended by the prosecutor.
b. Police entry on property. Next, the defendant argues that counsel was ineffective for failing to challenge, as part of his motion to suppress, the police entry into his home's breezeway. To succeed the defendant must show both that the argument would likely have been successful and that the failure to pursue it deprived him of an otherwise substantial ground of defense. Commonwealth v. Morin, 478 Mass. 415, 424 (2017).
According to the defendant, the covered opening between the side of his home and the detached garage was entitled to protection under the Fourth Amendment to the United States Constitution and the police entry into that area to knock on the kitchen door was without justification. The argument turns on the defendant's description of the breezeway as a closed space. His affidavit, however, cannot overcome the evidence that depicts the area with an open, but covered, walkway, without doors or other recognizable barriers, through which the exterior side door to the house was accessed, and to which the public was invited.
Specifically, the 2004 photograph supplied by the defendant, while not entirely clear, appears to depict an open, covered walkway between the garage and the house and does not show the presence of a door. Police testimony from the motion to suppress hearing was consistent with this description. The testimony repeatedly indicated that the officers walked up the driveway, directly to the side door in the breezeway, knocked, and were admitted through that side door directly into the kitchen.[2] Apart from the defendant's affidavit, there is no suggestion that a door or other enclosure secured the area between the garage and the house from access or observation by visitors or passersby.
Rather, the opening between the garage and house was "one that a visitor would naturally expect to pass through to gain access to the [side] door," and for this reason, it would not, contrary to the defendant's argument on appeal, "be part of the 'curtilage' entitled to Fourth Amendment protection." Commonwealth v. Pietrass, 392 Mass. 892, 901 (1984). Contrast Commonwealth v. Hurd, 51 Mass. App. Ct. 12, 16 (2001) ("[T]the object that was the subject of observations [an animal cage] was not in the driveway, but rather in a partially fenced-in back yard. In that location, it was not visible from the public street or even from the front, porch or shed doors"). Thus, as the motion judge concluded, the police in this case were permitted to approach the side door of the home and knock, "precisely because that is 'no more than any private citizen might do.' " Florida v. Jardines, 569 U.S. 1, 8 (2013), quoting from Kentucky v. King, 563 U.S. 452, 469 (2011).
c. Identification evidence. Also unavailing is the defendant's third claim -- that counsel should have sought to suppress the identification by the victim and her roommate of the defendant's picture on his driver's license that police found in the victim's apartment moments after the attack and displayed to each witness. Even if we assume that showing the defendant's driver's license to the victim and eyewitness was the equivalent of a showup or one-on-one identification procedure, because it was conducted within about an hour of the reported violent crime when the suspect was still at large, it was not "so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [the defendant] due process of law." Commonwealth v. Dew, 478 Mass. 304, 308 (2017) (good reason for showup thirty minutes after robbery at knifepoint, where police tracked suspect to nearby apartment). See Commonwealth v. Carlson, 92 Mass. App. Ct. 710, 712 (2018) ("For constitutional purposes, a one-photograph identification is the equivalent of an in-person, one-on-one identification [often referred to as a 'showup']").
2. Sufficiency of indictments. a. Armed home invasion. The motion judge correctly rejected the defendant's claim that the evidence failed to prove that he was armed when he entered the apartment, where the evidence showed he had used tin snips to cut a screen to enter the residence. Commonwealth v. Ruiz, 426 Mass. 391, 392-394 (1998).
b. Burglary with assault on an occupant. Indictment number 10091 (091) charged burglary with assault on an occupant under G. L. c. 266, § 14, but the defendant claims the crime to which he pleaded guilty in relation to this indictment was unarmed burglary under G. L. c. 266, § 15.[3] The defendant's assertion that he pleaded guilty to unarmed burglary appears to stem from the twice mistaken characterization by the clerk during the plea colloquy that the indictment charged unarmed burglary.[4] While we recognize that a defendant's knowledge of the crime charged should be apparent from the plea colloquy and that the inquiry in this case presents a closer question than need be, we nevertheless conclude that the defendant understood he was pleading guilty to burglary with assault on an occupant and not unarmed burglary.[5] See Commonwealth v. Canty, 466 Mass. 535, 549 (2013).
The body of indictment 091 tracked that portion of G. L. c. 266, § 14, that criminalizes an assault on an occupant, stating the defendant "did break and enter in the night time the dwelling house ... with intent therein to commit felony and did make an actual assault on a person lawfully therein." The reverse side of the indictment also correctly recited the applicable statute, G. L. c. 266, § 14. In the upper left corner of the reverse side, however, the letters "unar burg" had been typed.[6]
The law is clear, and was clear long before the defendant pleaded guilty in 1996, that the text in the body of the indictment dictates the crime charged. See, e.g., Commonwealth v. Brown, 116 Mass. 339, 340 (1874) ; Commonwealth v. McClaine, 367 Mass. 559, 560 (1975). In those situations where there is "a discordance between the caption and the text in the body of the indictment, the text would govern and supersede the caption...." Commonwealth v. Fernandes, 46 Mass. App. Ct. 455, 459, S.C., 430 Mass. 517 (1999). Here, the truncated "unarm burg" phrase barely qualifies as part of the caption and certainly cannot be viewed as part of the text in the body of the indictment on the opposite side of the document. It was therefore abundantly clear that the indictment charged burglary with assault on an occupant, and we are convinced that the defendant, who was represented by counsel, understood that point. See Commonwealth v. Fernandes, 430 Mass. at 519-520.
Furthermore, before the plea, the victim testified to the events in question, and the judge engaged the defendant in the following colloquy during plea hearing:
THE COURT : "[D]o you understand that you have been charged with five separate offenses?"
THE DEFENDANT : "Yes, I do."
THE COURT : "Did your attorney tell you the various elements of those offenses that [would] have to be proven at a trial of this case?"
THE DEFENDANT : "Yes."
THE COURT : "Did your attorney advise you of the evidence that the Commonwealth had against you relating to those charges?"
THE DEFENDANT : "Yes, he has."
THE COURT : "So, you were fully informed of the nature of the charges, meaning all the elements, as well as the evidence that the Commonwealth had against you before this hearing?" (emphases added)
THE DEFENDANT : "Yes, your honor."
The defendant's affirmative responses during this exchange signaled that he had discussed the charges with his attorney before the plea hearing, and that his attorney had explained the elements of those charges and the relevant evidence. Because indictment 091 cannot reasonably be mistaken for one that charges unarmed burglary for the reasons discussed above, this discussion, which preceded the clerk's mistaken characterization of the crime, would have alerted the defendant to the fact that he was charged with burglary with assault on an occupant. That discussion, together with his subsequent admission to facts that established that offense, support the conclusion that he knew he was pleading guilty to burglary with assault on an occupant. See Commonwealth v. Canty, 466 Mass. at 549 (2013).
Similarly telling is the defendant's failure to raise the argument for more than eighteen years and the failure to provide an affidavit from plea counsel in support of the defendant's assertion that he thought he was pleading guilty to unarmed burglary. See Commonwealth v. Thurston, 53 Mass. App. Ct. at 551.
3. Evidentiary hearing. Finally, we conclude that the judge did not abuse his discretion in denying the defendant's motion for new trial without an evidentiary hearing, because the motion and affidavits raised no substantial issue. See Commonwealth v. McWilliams, 473 Mass. 606, 622 (2016).
Orders denying motion to withdraw guilty pleas and denying motion for reconsideration affirmed.

During the grand jury proceedings that took place only sixteen days after the event, a police officer testified that he had gone to the side door and rung a doorbell, suggesting that that door was indeed one visitors were expected to use. The 2004 photograph offered by the defendant is consistent in that it depicts a house number next to both the front door and the side door.

The relevant portion of G. L. c. 266, § 15, reads, "Whoever breaks and enters a dwelling house in the night time, with the intent [to commit a felony] ... , the offender not being armed, nor arming himself in such house, with a dangerous weapon, nor making an assault upon a person lawfully therein, shall be punished ..." (emphases added).

The motion judge found that the defendant pleaded to unarmed burglary, but ruled that there was no prejudice. We disagree with that analysis. Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997) (we may rely on grounds different from the motion judge in affirming the lower court ruling).

The motion judge referred to the back side of the indictment as a "docket sheet."